UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  06-22957-Civ-MARTINEZ
MAGISTRATE P. A. WHITE

JUAN B. FERNANDEZ,            :

      Plaintiff,            :

v.                           :            <u>REPORT OF</u>
                                        <u>MAGISTRATE JUDGE</u>
METRO-DADE POLICE DEPT., et al.,:

      Defendants.           :

_____

    In this *pro se* prisoner civil rights action pursuant to 42 U.S.C. §1983, the plaintiff Juan Brinis Fernandez [referred to as Brinis in parts of the record] filed a complaint for damages and amendments thereto, based on events that took place on the night of his February 4, 2006 arrest and the morning hours of February 4th which followed. After prior Reports (DE#s 10, 24, 31, 41, 65) and Orders thereon (DE#s 11, 43, 44, 51, 71) the case is pending against three Miami-Dade Policemen: Officer Ramades Perez [Badge 4982], Officer Noel Rodriguez [Badge 5598], and Sgt. Roberto Perez [Badge 2437]. The remaining claims against Officers N. Rodriguez and Ramades Perez are that they engaged in malicious prosecution by charging that plaintiff committed Battery on a Law Enforcement Officer, a count which later was nolle prossed,[1] and that they used excessive force against the plaintiff at the arrest scene, after he was restrained. The claim which remains against Sgt. Perez [Roberto Perez] is that he denied plaintiff medical care at the arrest scene, and was responsible for subsequent delay in plaintiff's access to medical care thereafter. **This Cause is before the Court upon defendants' joint motion for summary judgment (DE#68)** with a statement of undisputed facts (DE#68-2) and exhibits A-I (at DE#68-

---

[1]     The record, as currently developed, reveals that as a result of this arrest, and plaintiff's subsequent entry of a guilty plea to 5 of 6 Counts charged in the State's February 24, 2006 Information, the plaintiff stands convicted of: three Counts of Burglary of an Unoccupied Dwelling [Counts 1, 3, and 5; each a 2nd degree felony], one Count of Resisting an Officer without Violence [Count 2; a 1st degree misdemeanor], and one Count of Possession of Burglary Tools [Count 6; a 3rd degree felony]. In accordance with plaintiff's plea, the charge of Battery on a Law Enforcement Officer [Count 4; a 3rd degree felony] was nolle prossed upon plaintiff's agreement to plead to five counts of the Information, with dismissal of Count 4, and his agreed understanding that he would be sentenced as an habitual offender.  As a result, he was sentenced to a term of 5 years.

3), as to which the plaintiff was advised of his right to respond.[2]

---

[2]    Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), an Order of Instruction (DE# 69) was entered, informing the pro se plaintiff Fernandez of his right to respond to the defendants' motion for summary judgment, and instructing him regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

Plaintiff filed a Response consisting of Exhibits A-P (at DE#72), a Statement of Disputed Facts (DE#73), a Brief in Opposition (DE#74), and plaintiff's sworn Declaration (DE#75). Defendants filed a Reply (DE#79) with an another exhibit (Ex.1); Plaintiff filed a "Sub-Reply," with exhibits labeled A and B (DE#83); and because plaintiff's Sur-Reply was not stricken (<u>see</u> Order DE#86) the defendants were granted leave to file their Supplemental Response in Objection to Plaintiff's Sub-Reply, with additional exhibits (DE#89).

## <u>DISCUSSION</u>

The defendants Officer Perez, Officer Rodriguez, and Sgt. Perez, through their motion (DE#68) and their own Declarations [Respectively Exs. A, B, and C at DE#68-3] and other exhibits, argue that they committed no deprivations of plaintiff Fernandez's constitutional rights, that they are entitled to qualified immunity and summary disposition in their favor, of claims in the amended complaint. In brief, defendants argue that there was probable cause to arrest Fernandez, that only necessary and reasonable force was used to make his arrest, and no force was used after he was restrained. They also argue that he had only minor bruises to his face for which he refused an offer of care at the place of his apprehension, and which were so minor in nature that they did not merit immediate care at the arrest scene. They further allege that after his apprehension Fernandez was taken directly to the Doral Substation for questioning [which they say lasted only 10 minutes], that pursuant to established procedure he was then taken to Ward D at Jackson Memorial Hospital for examination and care [which they say took about ½ hour], and that he then was taken to the jail for booking.

In brief, the record (including Defendants' Declarations, Exs. A-C at DE#68-3; Information, Ex.I at DE#68-3; Police Report, at DE#72 pp.9-10; Transcript of Guilty Plea at DE#68-3 Ex.D; Excerpts from Court file in Miami-Dade criminal case No. F06-3858, at DE#68-3 Ex.G; Victim/Witness Declarations, DE#72, Ex.E) shows that the following sequence of events involving the plaintiff occurred on February 4, 2006. Plaintiff Fernandez was suspected of involvement in a series of tool shed burglaries in a neighborhood near SW 102 Avenue and SW 32nd Street in Miami. On the early morning of

February 4, 2006, a stationary surveillance was established outside plaintiff's home. Officers Ramades Perez and Noel Rodriguez, who were part of the team, saw plaintiff approach and jump over the perimeter fence of the Russell Crovo residence at 2115 SW 102 Avenue, and attempt to break the lock on a tool shed or garage inside the yard. [The victim Crovo later gave a statement (DE#72, Ex.E) that plaintiff did not have permission to enter his property]. When Fernandez realized he was being watched, he dropped a flashlight and screwdriver [burglary tools], and fled running south on 102 Avenue. Officers Ramades Perez and Noel Rodriguez gave chase. Plaintiff jumped over another fence and entered the premises at the Jose Diaz residence at 3001 SW 102 Avenue, and attempted to hide behind an antique vehicle. [Victim Diaz gave a statement (DE#72, Ex.E) that plaintiff lacked permission to enter onto his property].  Officer Ramades Perez states that he approached, and that Plaintiff lunged from his hiding place and struck him [Ramades Perez] in the neck with his elbow,[3] that there was a brief struggle during which he struck plaintiff several times in the head with closed-fist punches, and that when he and the plaintiff slipped and fell to the ground, which was slippery due to rain, he scraped his knee, and lost his grip on the plaintiff, who again fled with him [R. Perez] and Officer N. Rodriguez in pursuit.[4]  With assistance of K-9 officers the plaintiff was located, having entered onto property belonging to Roberto Ponce, located at 3010 SW 101 Ct. [Victim Ponce later gave a statement (DE#72, Ex.E) that he did not

---

[3]      It is clear from the officers' Declarations and the police report that Plaintiff's alleged striking of Officer Ramades Perez with his elbow gave rise to the charge in Count 4 [Battery on a LEO] which was nolle prossed.
        It is noted that the Information against plaintiff (DE#68-3, Ex.I) contained a typographical error on Count 4, the 2/4/06 Battery on a LEO, which was nolle prossed. Count 4 [Ex.I, DE#68-3, p.96] states that Juan Brinis Fernandez was charged with committing the battery upon "<u>OFFICER N. PEREZ</u>" [not R. Perez].
        As discussed further, below, the record indicates that Count 4 was dismissed as part of negotiations, pursuant to which the plaintiff availed himself of a favorable sentence, upon entry of a guilty plea on the other 5 counts of the Information.

[4]      The police report (DE#72 p.10) and Officer Ramades Perez's Declaration (DE#68-3, Ex.A) indicate that due to the encounter on the Diaz property Officer Ramades Perez suffered bruising on the right side of his neck, and abrasions on his right knee, and further indicate that the Officer's injuries were minor, and were self-treated with first aid and an ice pack.

4

give permission for plaintiff Fernandez to enter onto his property]. Plaintiff was found hiding under a boat. Police dogs barked, but were not released, the plaintiff came out from hiding, and according to R. Perez and N. Rodriguez, he resisted arrest by swinging his arms and attempting to strike them, but did not make contact, and they were able to handcuff him and place him in a police car. He then was driven to the Doral District Station for questioning [which defendants state lasted 10 minutes], was taken to Ward D at Jackson Memorial Hospital for examination/treatment [which defendants state lasted 30 minutes] and finally was taken to the Miami-Dade County Jail.[5]

In contrast with plaintiff's complaint, and sworn statements in opposition to defendants' motion for summary judgment, alleging that he was beaten at the arrest scene _after_ being restrained, the defendants in their declarations and arrest reports state that the

---

[5]     The defendants' declarations and arrest reports do not indicate in whose car the plaintiff was transported to the Doral substation.
        Ramades Perez states that he was in the interview room, that the plaintiff refused to cooperate with the investigation, and that after the 10 minute attempt to question the plaintiff, "we ended the interview and called for an officer to transport Mr. Fernandez to Jackson Memorial Hospital Ward D and then to the Miami-Dade County Jail."   Officer Noel Rodriguez states that plaintiff was transported to Doral, that he did not participate in the interview, that the interview ended quickly, and that plaintiff was transported to Ward D and then to the main jail.  Officer Rodriguez states that he was with plaintiff at Ward D, and states " [h]e did not appear to have any significant injuries, and he was released from Ward D less than 30  minutes after his arrival. Thereafter, another officer and I transported Mr. Fernandez to the Jail for processing." Officer Rodriguez further states in his Declaration that a mugshot attached thereto as Ex.1 "accurately reflects the condition Mr. Fernandez was in from the time we arrested him until we released him to the custody of the Miami-Dade County Corrections and Rehabilitation Department."  In his Declaration, the defendant Sgt. Robert Perez states that he arrived on the arrest scene shortly after plaintiff had been apprehended by Officers R. Perez and N. Rodriguez. Sgt. Perez states that he observed that plaintiff had "only minor injuries," consisting of "a small bruise on the left side of his forehead and a small abrasion to his nose and right eye." Sgt. Perez states that he observed no other injuries on plaintiff, that he had offered him medical treatment at the scene of his arrest, but that plaintiff had refused and medical care, and refused to speak with him further at the scene. Sgt. Perez states that he did not participate in the interview of plaintiff at the Doral substation, and that after the interview plaintiff was transported to Ward D at Jackson Memorial Hospital, and then to the Miami-Dade County Jail.  Sgt. Perez further states in his Declaration that "it is standard police procedure to take any prisoner with any signs or complaints of injuries, no matter how minor and regardless of whether they have any visible marks, to Ward D prior to admission to jail."

only uses of force against the plaintiff during the course of his arrest were the blows inflicted about plaintiff's head or face by Ramades Perez [at the Diaz residence, when Perez struggled with plaintiff and attempted to hold him, after plaintiff had jumped out from behind the car and had allegedly struck Perez in the throat with his elbow], and whatever unspecified force was necessary to control plaintiff's flailing arms and handcuff him [after plaintiff, knowing he would be faced with use of K-9 force, came out from hiding under a boat at the Ponce Residence].

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Vinyard v. Wilson, 311 F.3ed 1340, 1346 (11 Cir. 2002). The government defendant claiming entitlement to qualified immunity must also prove that he was acting within his discretionary authority. Cottone v. Jenne, 326 F.3d 1352, 1357 (11 Cir. 2003). Here, the record shows that the defendant were acting within their discretionary authority, as Miami-Dade police officers, at the time of the events alleged. First, the court considers whether the plaintiff's allegations, if true, establish a constitutional violation. Vinyard, supra at 1346. Second, if there was a constitutional violation, the court must address whether the right was clearly established. Id.

### A. Fourth Amendment
### (Alleged Lack of Probable Cause for the
### *Nolle Prossed* Count 4 – Battery on a LEO)

Although the question was not framed as a separate issue or claim in the prior Reports, and rather was treated as intertwined with plaintiff's Malicious Prosecution claim, it is apparent that plaintiff believes and contends that he was subjected to a Fourth Amendment violation based on lack of probable cause.

A warrantless arrest without probable cause violates the Constitution, and provides a basis for a §1983 claim. Kingsland v. City of Miami, 382, F.3d 1220, 1226 (11 Cir. 2004); Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11 Cir. 1990); Motes v. Meyers,

810 F.2d 1055 (11 Cir. 1987). More specifically, an arrest made without probable cause runs afoul of the Fourth Amendment's prohibition of unreasonable searches and seizures. <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1143 (11 Cir. 2007). Probable cause to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed. <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991); <u>Draper v. United States</u>, 358 U.S. 307, 311 (1959); <u>Madiwale v. Savaiko</u>, 117 F.3d 1321, 1324 (11 Cir. 1997); <u>United States v. Kye Soo Lee</u>, 962 F.2d 430, 435 (5 Cir. 1992); ; <u>United States v. Herzburn</u>, 723 F.2d 773, 775 (11 Cir. 1984). The Constitution does not guarantee that only the guilty will be arrested, <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), and the existence of probable cause is an absolute bar to a section 1983 action for false arrest, <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11 Cir. 1996); <u>Marx v. Gumbinner</u>, <u>supra</u>, 950 F.2d at 1506, and cases cited therein. Also, the fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. <u>Marx</u>, <u>supra</u>, 950 F.2d at 1507; <u>Mills v. Town of Davie</u>, 48 F.Supp.2d 1378, 1380. Probable Cause "requires more than mere suspicion, but does not require convincing proof." <u>Bailey v. Board of County Commiss'rs of Alachua County</u>, 956 F.2d 1112, 1120 (11 Cir. 1992). <u>See also</u> <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11 Cir. 1998) (quoting <u>State v. Scott</u>, 641 So.2d 517, 519 (Fla. 3 Dist. 1994) ("The facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as to the facts necessary to support a conviction")). Moreover, the validity of an arrest is not vitiated, and an arresting officer is not stripped of entitlement to qualified immunity on a claim of false arrest so long as there was probable cause to arrest for some offense. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195-96 (11 Cir. 2002) (validity of an arrest does not turn on whether the offense for which there was probable cause was announced to the individual at the time of his/her arrest, nor does it turn on whether the offense was cited in the officer's

arrest report); <u>Stachel v. City of Cape Canaveral</u>, 51 F.Supp.2d 1326, 1331 (M.D.Fla. 1999) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made ...then the arrest was supported by probable cause, and the claim for false arrest fails") (quoting <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5 Cir. 1995)).  If an arrestee faced multiple charges, and if any one charge is supported by probable cause, the defendants are entitled to qualified immunity on the charge of arrest without probable cause in violation of the Fourth Amendment. <u>Skop</u>, <u>supra</u>, 458 F.3d at 1138.

In this case, it appears to be plaintiff's contention that there was no probable cause for including in the arrest reports the charge that he had elbowed Ramades Perez in the neck, which in turn resulted in inclusion of the charge of Battery on a LEO as Count 4 in the Information. During the plea colloquy (DE#68-3, Defendants' Ex.D) at which the plaintiff's guilty plea ultimately was accepted, resulting in his convictions for three counts of Burglary, one count of Resisting without Violence, and one count of Possession of Burglary Tools, he commenced denying commission of burglaries [stating that he had not stolen anything], possession of burglary tools, or hitting a police officer. After further discussion between counsel for the State, defense counsel, Fernandez, and the Court, Fernandez entered a guilty plea, pursuant to which he was to be sentenced as an habitual offender, upon his admission of guilt as to Counts 1, 2, 3, 5 and 6, and pursuant to which Count 4 [Battery on a LEO] would be nolle prossed by the State. (<u>See</u> Plea Colloquy, DE#68-3, Ex.D; Court Documents relating to Case F06-003858, at DE#68-3, Ex.G).

Citing DE#72, Ex.B, Plaintiff also argues that in relation to a prior 2005 arrest in Case F05-037061, [burglary and grand theft], he was a pretrial detainee out on bond, and that inclusion of the Battery on a LEO charge based on the events of February 4, 2006, caused his bond to be revoked. He argues that his incarceration based on the February 4, 2006 events therefore was "unreasonable."

Here, even if, *assuming arguendo*, the plaintiff did not strike
Officer Ramades Perez in the neck with his elbow, as he bolted out
from behind the antique car in the second yard that he entered
during the foot chase by police [the Diaz residence], this does not
suffice to show that there was no probable cause whatsoever for
plaintiff's February 4, 2006 arrest, as he would have the Court
believe.  Before the encounter at the Diaz residence, the plaintiff
had already been observed jumping a fence at about 2:20 a.m. at the
Crovo residence, without the owner's permission, with burglary
tools [a flashlight and screw driver], with apparent intent to
commit a break-in of a tool shed or garage inside the yard [an
offense, to which plaintiff plead guilty]. In addition, there were
two additional burglaries, for which plaintiff admitted guilt. As
reflected in the Information, these were based on plaintiff jumping
fences and entering onto properties without permission of the
owners [Diaz and Ponce], for the purpose of committing offenses
[resisting an officer, i.e., by fleeing to avoid arrest after
commission of the first offense at the Crovo residence]. It is
apparent that based on personal observations of the pursuing
officers, there was ample evidence for them to believe that
plaintiff Fernandez had committed a Burglary at the Crovo
residence, and thereafter did the same at the Diaz and Ponce
residences. To have committed burglary, plaintiff Fernandez did not
have to have entered the houses located on the victims' properties,
and despite his apparent belief to the contrary, as expressed
initially at his plea colloquy, he need not have actually stolen
items belonging to the home owners in order to be guilty of
committing the offenses of burglary. Entry into a victim's yard,
without permission, with intent to commit an offense, was
sufficient.[6]  To the extent that it embodies a claim that he was

---

[6]     For offenses committed in Florida after July 1, 2001, burglary is
defined as "entering a dwelling, a structure, or a conveyance with intent to
commit an offense therein, unless the premises are at the time open to the
public or the defendant is licenced or invited to enter..." Fla.Stat.
§810.02(1)(b).
        Such an offense (Burglary) is a felony of the second degree... if
in the course of committing the offense, the offender does not make an assault
or battery and is not and does not become armed with a dangerous weapon or
explosive, and the offender enters or remains in a: (a) Dwelling, and there is
another person in the dwelling at the time the offender enters or remains; (b)

9

arrested without probable cause, in violation of his rights under Fourth Amendment, plaintiff Fernandez's complaint fails.

## B.  Malicious Prosecution

To establish a §1983 claim for malicious prosecution, the plaintiff must prove: both a violation of a right to be free from unreasonable seizures, and the elements of a common law tort of malicious prosecution. Wood v. Kesler, 323 F.3d 872, 881 (11 Cir. 2003). Here, the plaintiff Fernandez has argued that the Officers Perez and Rodriguez falsely charged that he committed a Battery on a LEO, and that a *nolle prosequi* was entered as to that Count, according to Fernandez because there was no evidence to support that he had committed the offense. To establish a §1983 claim for malicious prosecution, the plaintiff must prove both the elements required under state law for a common law tort of malicious prosecution, and violation of his Fourth Amendment right to be free from unreasonable seizures. Kingsland v. City of Miami, 382, F.3d 1220, 1234 (11 Cir. 2004); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir.), cert. denied, 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003) (citing Uboh v. Reno, 141 F.3d 1000, 1002-04 (11th Cir.1998); Whiting v. Traylor, 85 F.3d 581, 584-86 (11th Cir.1996); and Kelly v. Curtis, 21 F.3d 1544, 1553-55 (11th Cir.1994)). As for the elements of a tort under Florida law, plaintiff Fernandez in this case must establish each of six elements to support a claim of malicious prosecution: (1) institution of an original judicial proceeding against the plaintiff; (2) the defendant was the legal cause of the original proceeding; (3) termination of the proceeding in favor of the accused/plaintiff; (4) absence of probable cause for the proceeding; (5) malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. See Kingsland, supra, at 1234 (citing Durkin v. Davis,

---

Dwelling, and there is not another person in the dwelling at the time the offender enters or remains; (c) Structure, and there is another person in the structure at the time the offender enters or remains... Fla.Stat. §810.023)A,
    For purposes of Fla.Stat. §810.02, Dwelling is defined as a building or conveyance with a roof over it, designed to be occupied by people lodging there over night, "together with the curtilage thereof." Fla.Stat. §810.011(2); and Structure, means a building of any kind, with a roof over it, "together with the curtilage thereof." Fla.Stat. §810.011(1).

814 So.2d 1246, 1248 (Fla. 2 Dist. 2002)).

In this case, plaintiff Fernandez cannot prevail on his malicious prosecution claim for the following reasons. First, as discussed supra, it is clear from the record that there was probable cause for Fernandez's arrest, and therefore required Element 4 is not satisfied.[7] Second, in order to establish that the 3rd Element [termination of the proceeding in favor of the accused] is satisfied, it is not enough for Fernandez to simply demonstrate that Count 4 [Battery on a LEO] was nolle prossed. Instead, the formerly accused [plaintiff Fernandez] must establish that there was a "favorable termination" indicative of the innocence of the accused, and this he has not done. As the Eleventh Circuit noted in Uboh v. Reno, 141 F.3d 1000, 1004 (11 Cir. 1998), the Supreme Court in Heck v. Humphrey, supra, 512 U.S. at 484, observed that the requirement of favorable termination in the context of malicious prosecution suits prevents parallel litigation over issues of probable cause and guilty and the possible creation of conflicting resolutions arising out of the same or identical transactions. In addition, Courts have reasoned that "only terminations that indicate that the accused is innocent ought to be considered favorable." Uboh, supra, at 1004 (quoting Hilfirty v. Shipman, 91 F.3d 573, 580 (3 Cir. 1996)(relying on Restatement (Second) of Torts §660 cmt. A ("Proceedings are 'terminated in favor of the accused'...only when their final disposition is to indicate the innocence of the accused.")). As the Uboh Court noted, other courts have found that for the favorable termination requirement to be satisfied, requires a showing that the disposition of the charge was indicative of innocence. Id. at 1004 (citing Taylor v. Gregg, 36 F.3d 453, 456 (5 Cir. 1994), and Singleton v. City of New York,

---

[7]    It is also apparent that Fernandez could not prevail on his §1983 Fourth Amendment claims for damages, in light of his guilty plea, finding of guilt, and sentencing in Case F06-003858. They would run afoul of Heck v. Humphrey, 512 U.S. 477 (1994), in which the Supreme Court held that if a judgment in favor of a state prisoner seeking damages in a §1983 suit would necessarily imply the invalidity of his or her conviction or sentence, the claim for damages is not cognizable under §1983 and the complaint must be dismissed, because the claim for damages will not exist unless and until the prisoner can demonstrate that the conviction or sentence has previously been reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

632 F.2d 185, 193 (2 Cir. 1980)). The Court in Uboh, concluded, therefore, that "courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution." Id. Here, plaintiff Fernandez's bare allegation that the nolle prosequi of Count 4 [Battery on a LEO] was entered because he was innocent of having committed the offense, is not supported by the record. It is apparent from the record that the dismissal of Count 4 was a result of a compromise reached as part of plaintiff's agreement to enter a plea of guilty to the other 5 Counts against him and forego trial.

The plaintiff Fernandez's claim of malicious prosecution therefore fails, and as to that claim defendants Ramades Perez and Noel Rodriguez are entitled to summary disposition in their favor of the complaint against them.

### C. Excessive Force

In their motion [DE#68], the defendants argue that they are entitled to qualified immunity with regard to the force used to effect plaintiff Fernandez's arrest (i.e., Ramades Perez's striking of Fernandez several times in the face, during a struggle in the yard of the Diaz residence to which Fernandez had fled, and where he was hiding). The defendants also argue that with regard to additional blows which they alleged inflicted after Fernandez was placed in restraints outside the Ponce residence, the plaintiff cannot prevail. They argue that they did not inflict the alleged beating, and that they are entitled to summary judgment in their favor because medical records indicate Fernandez had only bruising and scrapes to his face. Defendants contend that those injuries are consistent with defendant Ramades Perez having previously struck plaintiff Fernandez during their struggle at the Diaz property [before Fernandez escaped, fled into hiding by a boat parked in the yard of the Ponce residence, and according to the defendants, was taken into custody and handcuffed without further use of force].

A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other

seizure of a free citizen is to be analyzed under the Fourth Amend-
ment and its "reasonableness" standard. Graham v. Connor, 490 U.S.
386 (1989); Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11 Cir.
2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11 Cir. 2002); Ortega
v. Schram, 922 F.2d 684, 694 (11 Cir. 1991). Such an analysis
requires a court to balance "the nature and quality of the
intrusion on the individual's fourth amendment interests against
the importance of the government interest alleged to justify the
intrusion." Graham, supra, quoting United States v. Place, 462 U.S.
696 (1983). The factors a Court considers when balancing the neces-
sity for an application of force against an arrestee's
constitutional rights include: (1) the severity of the crime at
issue; (2) whether the suspect poses an immediate threat to the
safety of the officers or others, and (3) whether the suspect is
actively resisting arrest or attempting to evade arrest by flight;
Graham, supra, 490 U.S. at 396; Vinyard, supra, 311 F.3d at 1347;
Lee, supra, 284 F.3d at 1197; Ortega, supra, 922 F.2d at 695. In
determining whether force applied was "reasonable" under the
circumstances (i.e., proportional to the need for its use), the
Court must examine: (1) the need for the application of force; (2)
the relationship between the need and the amount of force that was
used; and (3) the extent of the injury inflicted upon the
individual to whom the force was applied. Vinyard, at 1347; Lee at
1998. Although the test applied by the Eleventh Circuit previously
included a subjective prong, examining whether the force was
applies maliciously, see e.g. Leslie v. Ingraham, 786 F.2d 1533,
1536 (11 Cir. 1986), that factor has been eliminated from the
analysis by Graham and other cases establishing that the excessive
force inquiry should be completely objective, thereby excluding
consideration of the Officer's intentions. Lee, supra, 284 F.3d at
1198 n.7. Thus, "Reasonableness" for purposes of such an analysis
is judged according to an objective standard under the totality of
the circumstances, without regard to the officers' underlying
intent. Graham, supra at 389.[8] If the force applied was reasonable

_____

[8]     The Court notes that, just as a claim of excessive force by an
arresting officer is cognizable under 42 U.S.C. §1983, so too is a claim that
an officer who himself did not use force, but was present, failed to intervene
to prevent unconstitutional force by a fellow officer, if circumstances were

under the circumstances and not excessive, the police officer has
not violated any clearly established constitutional right, and is
entitled to summary judgment based upon qualified immunity. Moore
v. Gwinnett County, 967 F.2d 1495, 1498 (11 Cir. 1992), quoting,
Leslie v. Ingram, 786 F.2d 1533, 1536 (11 Cir. 1986).

It appears that as to the first use of force by Ramades Perez
at the Diaz residence, the defendant Perez is entitled to qualified
immunity.  Consideration of the three core Graham v. Connor
balancing factors (severity of the suspect's crime, whether he
posed an immediate threat to the officers or the public, and
whether he was actively resisting or attempting to evade arrest by
flight) in light of the record evidence, indicates that the use of
some force to take control of and attempt to restrain [and possibly
handcuff] the plaintiff was appropriate. Even if there were no
weapon present, or object useable as a weapon [Fernandez, before
fleeing from the Crovo property, and hiding in the yard outside
the Diaz residence, had apparently dropped his flashlight and
screwdriver at the Crovo property when confronted by police], the
record indicates that Fernandez was known to police as a repeat
offender, suspected of break-ins in the neighborhood. In addition,
the defendant officers personally observed that Fernandez earlier
had fled from them when he became aware of their presence at the
Crovo property.  Officer Ramades Perez's Declaration and the police
reports establish that after a foot chase with officers in pursuit,
Fernandez was found in hiding on the curtilage of the Diaz
property, and when discovered bolted out of his hiding place and
became engaged in a physical struggle with Officer Ramades Perez.
It is apparent, where the plaintiff was observed attempting to
commit a break-in at the Crovo property, and had continued to try
and escape and hide from officers, that a reasonable officer could
conclude under such circumstances that the suspect, not yet
captured and handcuffed, might pose some risk to their safety or

---

such that intervention was possible. See Fundiller v. City of Cooper City, 777
F.2d 1436, 1441-42 (11 Cir. 1985).

        In this case, Ramades Perez and Noel Rodriguez were together at
the scene of Fernandez's apprehension, and handcuffing.

that of the public, or might further attempt to escape. It is apparent that a striking of some blows by Officer Perez during the struggle at the Diaz property, as an attempt to protect himself and to control a fleeing felon, would clearly be within the realm of acceptable use of force during arrest. It is noted that as a basis for his claim of use of excessive force, the plaintiff does not rely on blows which defendant Ramades Perez claims he inflicted.[9] Similarly, although the defendants' evidence indicates that at the third house where he was captured [the Ponce residence] the plaintiff resisted by waiving his arms when he came out from hiding, it is apparent from the record that what ever force was used at that point to apply handcuffs to Fernandez's wrists was minimal, and therefore reasonable, and not a violation of the Fourth Amendment, under the circumstances.

As discussed below, however, with regard to the remaining alleged uses of force against plaintiff Fernandez [all allegedly applied after he was handcuffed and in control of the arresting officers], there are genuine issues of material fact in dispute, which foreclose summary judgment. Celotex Corp. v. Catrett, supra.

While case law provides that reasonable measured uses of force may be applied to effect a suspect's arrest, Courts have also held that gratuitous applications of force are not constitutionally protected. See Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6 Cir. 1988) (application of chemical spray to suspect, who although still squirming and kicking his feet on the air, was already on the ground and bound by restraints, and had stopped resisting and posed no risk of flight); McDowell v. Rogers, 863 F.2d 1302, 1307 (6 Cir. 1988) (totally gratuitous blow from a policeman's nightstick may cross the constitutional line); Gaddis v. Redford Township, 364 F.3d 763, 772 (Court stating: "we acknowledge that even minor uses of force are unconstitutionally excessive if they are totally gratuitous," but holding that Officer

---

[9]     Plaintiff, in his Declaration [DE#75] opposing defendants' summary judgment motion, states that he "never was in contact" with Perez until after he was handcuffed at the Ponce property at 3010 SW 101 Court.

Bain's "reasonable need to prevent Gaddis from fleeing and to discern whether he was armed justified his action"). The Eleventh Circuit, in the Eighth Amendment/prison context, has noted that "By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued, or, as in this case, is incapacitated," <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1303 (11 Cir. 2002) (citing cases).[10] The Court, in <u>Skrtich</u>, upon finding that the facts of the earlier cases were very similar to those before it on the unlawful infliction of force on nonresisting prisoners, determined that where the circumstances facing the prison guards (specifically, a non-compliant inmate who had been restrained by the guards and no longer posed a threat) "were enough like the facts in precedent that no reasonable, similarly situated official could believe that the factual differences between this line of precedent [<u>i.e.</u> <u>Harris</u>, <u>Davis</u>, <u>Williams</u>, and <u>Perry</u>] and the circumstances here might make a difference to the conclusion about whether the official's conduct was lawful and we find no merit to the defendant officers' arguments claiming entitlement to qualified immunity." <u>Skrtich</u>, 280 F.3d at 1303-04.

    This Eleventh Circuit has also held in the Fourth Amendment

---

[10]    The <u>Sirtich</u> Court cited: <u>Harris v. Chapman</u>, 97 F.3d 499, 505-06 (11 Cir. 1996) (where prisoner, who had resisted haircut and threatened to kill the barber, was forcibly removed from his cell and beaten and restrained by a group of officers, a sixth officer's actions of snapping the prisoner's head back with a towel, slapping him in the face, and uttering racial epithets and other taunts were a constitutional deprivation, meriting award of damages by jury); <u>Davis v. Locke</u>, 936 F.2d 1208, 1212-13 (11 Cir. 1991) (where prisoner who attempted escape and was recaptured and placed in a dog box on a truck with his hands shackled behind his back, the action of pulling him by the ankles from the box, causing him to land on his head, causing him to suffer psychological injuries, and the court held that the ongoing violation of escape had been terminated, and a jury could reasonably conclude that he posed no continuing risk of threat to the guards; <u>Williams v. Cash - C.O.I.</u>, 836 F.2d 1318, 1320 (11 Cir. 1988) (where prisoner refused to comply with a prison guard's order to return to his cell, and prisoner alleged he was subdued and his arm was broken, summary judgment for the guard was no appropriate where the prisoner alleged that the guard purposefully broke his arm after he had ceased to resist); and <u>Perry v. Thompson</u>, 786 F.2d 1093, 1095 (11 Cir. 1986) (Appellate Court, finding a "square, head-on dispute of material facts," reversed grant of summary judgment in prisoner haircut case, where prisoner whose hands were cuffed in front of him, alleged he was thrown to the floor and beaten, the defendant officers' evidence was that the prisoner was shaved without incident and that medical records showed no complaint of injury on the day of the alleged beating).

context that even where there is probable cause and a full
custodial arrest for which the arresting officer is held to be
entitled to qualified immunity, the arresting officer does not
enjoy the protection of qualified immunity on a distinct part of
the Fourth Amendment claim alleging excessive use of force, where
the evidence, viewed in the light most favorable to the non-
movant/plaintiff, shows that post-restraint use of force was
unnecessary and disproportionate. Lee v. Ferraro, supra, 284 F.2d
at 1199 (holding that "Even though [Officer] Ferraro undoubtedly
possessed the lawful power to effect a custodial arrest and secure
Lee with handcuffs, a reasonable officer could not possibly have
believed that he then had the lawful authority to take her to the
back of her car and slam her head against the trunk *after* she was
arrested, handcuffed, and completely secured, and after any danger
to the arresting officer as well as any risk of flight had passed.
Once an arrestee has been fully secured, such force is wholly
unnecessary to any legitimate law enforcement purpose").

    In the present case, there is conflicting evidence regarding
whether the defendant officers gratuitously applied force to the
plaintiff after he was controlled and handcuffed. The defendants
Ramades Perez and Noel Rodriguez state in their respective
Declarations that their was no post-restraint use of force.  The
plaintiff has alleged in his pleadings, and states in his sworn
Declaration (DE#75) that, after he was handcuffed and was lying on
the ground, Ramades Perez kicked him several times and stepped on
his face with all his weight, causing him to bleed, and punched his
head and ribs, and stuck his thumb under his chin, causing him such
pain that he almost fainted. He also alleges that on the way out of
the back yard, Noel Rodriguez punched him in the ribs and slammed
his face into the trunk of the unmarked police car, causing him to
bleed more severely.  The defendants state that these allegations
by the plaintiff are fictitious. They argue that if beatings of the
nature alleged by Fernandez had indeed been inflicted by them, his
injuries would have been much more significant; and they further
argue that there would have been evidence of bleeding (i.e. they
claim that there would have been notations of bleeding in the

17

hospital record; and there would have been evidence of blood on plaintiff's clothing in the mug shot which apparently was taken of plaintiff at the county jail, after his release from the hospital).

The defendants' exhibits include plaintiff's medical record filed with their motion (DE#68-3, Ex.E); the Affidavit of Vania Bredy (DE#79-2), a Jackson Memorial Hospital ("JMH") Health Information Administrator, interpreting code entries in the JMH medical record; and the Affidavit of Lisa Cafiero (DE#89-2, Ex.1), a Registered Nurse, comparing plaintiff's allegations of alleged brutality, with notations of injury in the JMH medical record. Defendants argue contend that plaintiff's injuries, which were apparent upon examination at JMH Ward D, on February 4, 2006, were limited to "minor" bruises on his face. These exhibits are offered by defendants in support of their argument that there were no injuries to Fernandez's neck, mouth, nose, or ribs, which would be expected if brutality of the type alleged by plaintiff had occurred.

The Court finds, upon examination of evidence offered by the defendants, that there is conflict between what defendants argue, and what is apparent on the face of exhibits which they have themselves proffered.

Defendants have argued, and stated in their affidavits, that after being handcuffed plaintiff was taken to the Doral Substation where an attempted questioning consumed about 10 minutes of time, that plaintiff was then taken to JMH Ward D for an examination which lasted about 30 minutes, and moved to the County Jail where his mug shot was taken. The problem with these assertions is that arrest documents show that pursuit of the plaintiff began at about 2:20 a.m., and that he was arrested at about 3:03 a.m. on February 4, 2006. If he was then taken to the Doral sub-station for a 10 minute interview that was quickly terminated due to plaintiff's refusal to talk, and was then promptly taken to JMH Ward D for a ½ hour medical exam, and then to the County Jail, where a mug shot was taken, there appear large unexplained discrepancies of time on the record. The Hospital medical record clearly shows that the

18

plaintiff did not arrive at the hospital until 11:40 a.m. on
2/4/06, that he was not registered until 12:35 p.m. on 2/4/06, and
that he was not released from the hospital until 16:35 [4:35 p.m.]
on 2/4/06.  The mug shot, on which the defendants rely as evidence
that he had no bleeding (Ex.1 at DE#68-3 p.10 of 99, attached to
Rodriguez's Affidavit Ex.A) presents further discrepancies. The
"Mug Shot Profile" indicates that the "Arrest Date" was "02-04-
2006," and that the "Photo Date" was "02-04-06." Near the foot of
the exhibit, three lines up from the bottom, in the column of
information on the left side of the page, appears the date and time
"Feb 4 2006 12:00AM." It of course is impossible that the page was
generated and that the photo was taken at 12:00 a.m. on 2/4/06.
Even if there were a typographical error, and the actual time was
instead 12:00 p.m., it is impossible that the page was generated
and the photo was taken at 12:00 p.m. This is because at 12:00 a.m.
on 2/4/06, the initial observation of Fernandez at the Crovo
residence had not yet occurred [the foot pursuit by police did not
commence until about 2:20 a.m.], and at 12:00 p.m. on 2/4/06 the
plaintiff was still at Ward D of Jackson Memorial Hospital, and was
not released until 4½ hours later].

    While the defendants appear to indicate that they took plain-
tiff Fernandez directly from the arrest scene to the Doral Station,
and kept him there for about 10 minutes, and then took him to JMH
for medical treatment, it is clear that more than 8 hours passed
between Fernandez's arrest and his arrival at the hospital.
Precisely what occurred during that period of time is not clear
from the defendants' evidence of record.  The plaintiff, however,
has stated under penalty of perjury, in his Declaration (DE#75),
that he was bleeding from the nose after Ramades Perez kicked him,
and that he bled more profusely when Noel Rodriguez slammed his
face on the trunk of the police car to which he was taken in hand-
cuffs. Plaintiff further states in his Declaration (DE#75) that he
was kept in the Doral interrogation room for about 9 hours, and
then, before he was transported to the hospital, Sgt. Perez ordered
him to to clean himself up (wash his face). Id. ¶¶23, 26. The time
delay, and asserted washing of plaintiff before he was taken to the

hospital, could explain the absence of any notation in the medical record, by JMH medical staff, of active bleeding, or presence of dried blood on the plaintiff's face, upon examining him.

In the light of conflicting sworn statements by the defendants and plaintiff about whether post-restraint force occurred, for the Court to determine whether bruises to Ferndandez's face resulted only from blows which Ramades Perez says he inflicted upon the plaintiff outside the Diaz property, whether they resulted from post-restraint use of force, or both, would require the Court to engage in speculation and make credibility determinations. The defendants offer the Affidavit of Nurse Cafiero, as a medical opinion upon her comparison of plaintiff's Declaration and the medical record, that bruises were limited to Fernandez's face; that the medical record of his examination did not reflect evidence of other injuries to his mouth, lip, chin, nose, neck, chest, abdomen, or extremities; and that plaintiff's injuries were deemed by the examining physician to be sufficiently minor that only Tylenol was given as pain relief. The defendants urge that the Court should re-ject as pure fabrication, plaintiff's sworn statement that he was beaten and slammed into the car hood after being handcuffed. For the Court to make determinations at this juncture regarding whether bruises or other signs of injury would have been apparent on plaintiff's nose, neck or ribs, due to the alleged post-restraint uses of force if they occurred, or to reject out of hand plaintiff's claims and Declaration [as defendants' urge] would again require it to speculate, and make credibility determinations. Summary judgment is not a procedure for resolving a swearing contest. Chandler v. Baird, 926 F.2d 1057 (11 Cir. 1991). In this case, resolution of the issues and facts that are in dispute, based upon the parties' opposing and conflicting Affidavits, and other evidence, would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., supra, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary

judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255 (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

In sum, summary judgment on plaintiff's claim that he was subjected to post-restraint excessive force, is not appropriate.

## D. <u>Access to Medical Care</u>

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. <u>See</u> <u>Estelle</u>, <u>supra</u>, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, <u>see</u> <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, <u>Farrow v. West</u>, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, <u>Brown v. Hughes</u>, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

Here, Plaintiff Fernandez alleged in his pleading that the arresting officers' supervisor, Sgt. Roberto Perez, arrived at the arrest scene after he was handcuffed, and use of force had ceased. Plaintiff states in his Declaration (DE#75), however, that at the arrest scene Officer Ramades Perez pointed out to Sgt. Roberto

Perez that he was actively bleeding, and Sgt. Perez took no steps to provide or obtain medical assistance before he was taken away. In his Declaration, plaintiff states his injuries were severe enough to cause bleeding, and clotting which at least temporarily prevented him from being able to breath through his nose.

The defendant (Roberto Perez, Affidavit, DE#68-3, Ex.C) points out that it is "police procedure to take any prisoners with any signs or complaints of injuries, regardless of how minor and re-gardless of whether they have any visible marks, to Ward D prior to admission to the Jail." Here, Plaintiff was not taken for medical examination before being taken to a police station for questioning.

As discussed above, it is clear that the plaintiff did not merely remain at the Doral sub-station for a short time (enough to allow a 10 minute interview) as the defendants' motion and affida-vits would appear to suggest. Rather, he was there for 8 hours or more before being taken for examination and treatment at the hos-pital, where bruising and abrasions were noted, and pain medication was given. Despite defendant Perez's statement in his Affidavit (DE#68-3, Ex.C) that the only injuries apparent to him were minor (a small bruise to the left side of plaintiff's forehead and a small abrasion to his nose and right eye), the plaintiff, in addition to asserting that Perez knew he was bleeding at the arrest scene, further asserts that Perez himself directed that he wash up just before he was taken from the Doral Station to Jackson Memorial Hospital for examination.

It is apparent that the summary disposition of plaintiff's claim that Sgt. Roberto Perez denied or delayed access to medical care, is inappropriate. There exist genuine issues of material fact regarding the nature, extent, and severity of plaintiff's injuries, and despite injuries which plaintiff's evidence of bleeding would suggest were more severe than minor bruising on his face and a scrape on his nose, it is apparent that plaintiff was not given access to medical care until more than 8 hours after his arrest.

**CONCLUSION**

22

It is therefore recommended that: 1) the defendants' motion for summary judgment (DE#68) be GRANTED, IN PART, as to the defendants Ramades Perez and Noel Rodriguez, on the claims of arrest without probable cause and malicious prosecution, and on the claim of excessive force insofar as force was applied prior to and during handcuffing; and that the defendants' joint motion otherwise be denied; and 2) the case remain pending against the defendants Officer Ramades Perez and Officer Noel Rodriguez on the claim of post-restraint uses of force at the scene of plaintiff apprehension; and that the case also remain pending against the defendant Sgt. Roberto Perez on the claim of denial and or delay in access to medical care following plaintiff's injury on arrest.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: January 22nd 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Juan B. Fernandez, Pro Se
     DC# 395380
     Everglades Correctional Institution
     P. O. Box 949000
     Miami, FL 33194-9000

     Dennis A. Kerbel, Esquire
     Assistant County Attorney
     Miami-Dade County Attorney's Office
     Stephen P. Clark Center
     111 N.W. 1st Street, Suite 2810
     Miami, FL 33128